819 So.2d 558 (2002)
Kelvin Jarnard JONES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00947-COA.
Court of Appeals of Mississippi.
June 18, 2002.
*559 David L. Walker, Southaven, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.

PROCEDURAL HISTORY
¶ 1. Kelvin Jarnard Jones was indicted by the Tate County grand jury on a four-count indictment, counts I and III for burglary of a dwelling house and counts II and IV for grand larceny. The State tried Jones only on counts III and IV. The jury reached a guilty verdict and the court sentenced Jones to a term of twenty-five years for burglary of a dwelling and a five-year term for grand larceny, the terms to be served consecutively.
¶ 2. Jones's post-trial motions were denied by the trial court. Aggrieved, Jones *560 has perfected his appeal and comes before this Court citing two issues:
I. Whether the trial court erred in denying peremptory jury instructions concerning the elements of the crimes charged?
II. Whether the verdicts of the jury are against the overwhelming weight of the evidence?
¶ 3. Finding no error, we affirm the trial court.

STATEMENT OF THE FACTS
¶ 4. On or about September 20, 2000, Mr. Gerald Rosshirt awoke to find his home had been burglarized. He testified that his briefcase belongings had been tampered with and his wife's and his sister-in-law's purses, two cellular telephones, his nephew's lunch money and his wife's keys to his vehicle, a blue Dodge Intrepid, were all stolen from the inside of the home. Outside, Mr. Rosshirt discovered his car, the blue Intrepid with a Mississippi personalized tag of "IPRINT," was missing from his driveway.
¶ 5. The Tate County Sheriff's Department investigated the crime scene. They discovered that the bathroom window screen, near the kitchen, was torn off and determined this to be the entry point of the burglar. One purse was recovered inside the home, although the cash was missing from the wallet.
¶ 6. A friend of Mr. Rosshirt noticed the stolen vehicle in the parking lot of the Deltona Lighting Company the same evening of the burglary. He phoned Mr. Rosshirt, and upon verification that it was in fact his car, Mr. Rosshirt notified the police. However, the vehicle was gone from the lot when the police arrived. On September 22, 2000, the vehicle was spotted again in the Deltona parking lot, this time the observer was Deputy Michael Hissong of the Tate County Sheriff's Department.
¶ 7. Surveillance was set up on the stolen vehicle. Officers from the sheriff's department and the highway patrol assisted officers of the Senatobia Police Department in this endeavor. Surveillance vehicles were positioned all around the parking lot, with officers also hiding in the tall grass in close proximity to the vehicle. All officers involved kept abreast of the situation by using radio transmissions. All officers testified essentially to the same facts. The blue stolen vehicle, bearing the license plate of "IPRINT," was parked at the Deltona Lighting Company. A small red car entered and exited the lot two or three times, the final time dropping off a male passenger. This small red car was driven by a female, later identified as Tiffany Phillips. The red car left the scene with only the female driver in the car, followed shortly thereafter by the stolen blue Intrepid. The red car was stopped and the driver was questioned by officers. The stolen blue car gave way to a chase by the police. The tire of the stolen blue Intrepid blew out, causing the vehicle to stop in a muddy field of grass. The driver got out and a foot chase ensued. The officers were not able to locate the suspect that evening.
¶ 8. Tiffany Phillips was questioned and initially did not provide helpful information to the police. She agreed to cooperate, without the use of leniency promises made by the police, and told what information she knew about the person she dropped off at the stolen blue Intrepid. She testified that his name was Kelvin Jones, also known as "Fox." They were dating, although she testified their relationship was rocky. She had seen Jones driving the same stolen blue Intrepid on Wednesday, two days previous to the day in question, in the town of Sardis, Mississippi. She *561 told the police and later testified that Jones approached her after the chase, with mud on his clothing, told her that the police were after him and said that he was going to go to Memphis, Tennessee for a while.
¶ 9. The police located Jones in Memphis and arrested him. The stolen car found in the muddy field after the chase was Mr. Rosshirt's. The keys were hanging in the ignition, leaving the steering column intact, showing that the keys must have been used to start the car. No fingerprints were found at the Rosshirt home or on the outside of the vehicle. A latent thumb print was found on a plastic bottle located inside the stolen vehicle. The thumb print belonged to Kelvin Jones.
¶ 10. A jury convicted Jones of burglary of a dwelling and grand larceny. The court sentenced Jones to the maximum time allowed for each charge to be served consecutively, for a total of thirty years.

ANALYSIS
¶ 11. Jones argues that the State failed to prove beyond a reasonable doubt that he was guilty of burglarizing the Rosshirts's home and the crime of grand larceny. Therefore, he argues, he was entitled to a peremptory instruction for a verdict of acquittal. In reviewing the grant or denial of a peremptory instruction, this Court must review the evidence in a light most favorable to the verdict. May v. State, 460 So.2d 778, 780-81 (Miss. 1984).
¶ 12. In the case before us, there were no eyewitnesses or any other direct evidence that Jones burglarized the Rosshirts's home or committed grand larceny. However, he was connected to the crimes by circumstantial evidence. That evidence consisted of the testimony of Tiffany Phillips that she saw Jones in the stolen blue Intrepid on the day it was stolen and that she dropped Jones off in the parking lot where the car was positioned. She further testified that Jones approached her after the police attempted to apprehend him. Furthermore, he told Tiffany that the police would look for him with her so he needed to flee to Tennessee. Jones's latent fingerprint was also found in the car on a disposable plastic drink bottle.
¶ 13. The unexplained possession of recently stolen property is a circumstance from which culpability of a crime may be inferred. Brooks v. State, 695 So.2d 593, 595 (Miss.1997). For evaluation of that inference, our Courts have utilized the following factors:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Brooks, 695 So.2d at 594-95; Shields v. State, 702 So.2d 380, 383 (Miss.1997). "This Court has consistently held the unexplained possession of recently stolen property is prima facie, although no means conclusive, evidence of burglary." Id. at 594 (citing Weaver v. State, 481 So.2d 832, 834 (Miss.1985); Huddleston v. State, 220 Miss. 292, 70 So.2d 621 (1954)).
¶ 14. When we examine the temporal proximity of possession, we find that the facts of this case lend great strength to the inference that Jones committed the burglary. There is evidence that Jones possessed fruits of the burglary on the same day of the crimes. He later drove the car, can be placed at the scene, and, by the evidence of the fingerprint found inside the *562 car, can be placed inside the vehicle. The facts of this case regarding the number or percentage of the fruits of the crimes that Jones possessed also lends strength to the inference that Jones committed the burglary and larceny. Jones was seen getting into the vehicle and he told his then girlfriend that the police was looking for him. He had possession of the keys to the care which had been taken from the inside of the home. The attempt at concealment or any other evidence of guilty knowledge also supports the inference of the crimes as Jones fled from the police as they attempted to apprehend him. Furthermore, he fled the state after telling a witness that he needed to leave Mississippi so he would not get caught. Finally, as to whether Jones provided an explanation as to why or how he came into possession of the stolen vehicle, he offered no explanation. Therefore, the strength of the inference of the crimes charged may be drawn from this lack of explanation.
¶ 15. These factors created a question of fact for the jury to resolve. Reynolds v. State, 776 So.2d 698(¶ 7) (Miss.Ct. App.2000). This precluded the grant of a peremptory instruction. The trial court was not in error in denying the peremptory instruction and therefore, we affirm such denial.
¶ 16. Jones's argument regarding the denial of the judgment notwithstanding the verdict (JNOV), or alternatively, a new trial, also challenges the legal sufficiency of the evidence against him. These challenges require consideration of the evidence before the court when made, so this Court must review the rulings on the last occasion the challenge was made at the trial level. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This occurred when the trial court overruled Jones's motion for JNOV. The Mississippi Supreme Court has stated, in reviewing an overruled motion for JNOV, that the standard of review shall be:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778.
¶ 17. It is apparent from the record that there was abundant evidence presented during trial implicating Jones in the crimes. Accepting as true all evidence favorable to the State, the record shows that the Rosshirt home had a torn screen at the entry point window, articles were stolen from inside the home, Jones can be placed inside the stolen vehicle taken from the Rosshirt home, Jones was delivered to the scene where the stolen vehicle was parked, Jones was seen driving the vehicle on the day it was stolen, the stolen vehicle was driven with keys also stolen from inside the Rosshirt home, Jones fled from the police when they attempted to apprehend him and fled from the state to avoid apprehension. Jones was convicted of violating Mississippi Code Annotated sections 97-17-23 (Rev.2000) and 97-17-41 (Rev. 2000). Section 97-17-23 for burglary, breaking and entering inhabited dwelling states:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling *563 house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the penitentiary not less than three (3) years nor more than twenty-five (25) years.
Miss.Code Ann. § 97-17-23 (Rev.2000). Section 97-17-41, for grand larceny, states in pertinent part:
Every person who shall be convicted of taking and carrying away feloniously, the personal property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the penitentiary for a term not exceeding five (5) years; or shall be fined not more than One Thousand Dollars ($1,000.00), or both.
Miss.Code Ann. § 97-17-41 (Rev.2000).
¶ 18. When reviewing the evidence in the light consistent with the verdict and giving the State all favorable inferences which may be drawn from the evidence, this Court finds that the verdict was a reasonable one which a fair minded jury could have found. Accordingly, this issue lacks in merit, and the verdict of the jury will not be disturbed.
¶ 19. Jones also argues that the jury verdict was against the overwhelming weight of the evidence and requests a new trial. The Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." McClain, 625 So.2d at 781. Furthermore, "the challenge to the weight of the evidence via motion for a new trial implicated the trial court's sound discretion." Id. This Court will reverse only for an abuse of discretion and, on review, will accept as true all evidence favorable to the State. Id. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)).
¶ 20. In the case at bar, the jury heard the witnesses and the evidence and arguments presented by both the State and the defense. The question of Jones's guilt was for the jury to decide. The jury's decision to believe the State's evidence and witnesses was well within its discretion. Moreover, the jury was within its power to weigh the evidence and the credibility of the witnesses's testimony and to convict Jones. The trial court did not abuse its discretion by refusing to grant Jones a new trial based on the weight of the evidence. The jury verdict was not so contrary to the overwhelming weight of the evidence that, to allow it to stand, would have been to promote an unconscionable injustice. The trial court properly denied Jones's motion for a new trial.
¶ 21. THE JUDGMENT OF THE TATE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT III OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS; COUNT IV OF GRAND LARCENY AND SENTENCE OF FIVE YEARS, WITH SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, *564 MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.