# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01116-COA

**CHRISTOPHER ORLANDO HOBSON A/K/A**  **APPELLANT**
**CHRISTOPHER HOBSON A/K/A**
**CHRISTOPHER L. HOBSON A/K/A**
**CHRISTOPHER O. HOBSON**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, FELONY EVASION, COUNT II, MISDEMEANOR RESISTING ARREST AS A LESSER INCLUDED OFFENSE OF SIMPLE ASSAULT ON A POLICE OFFICER, AND COUNTS III AND IV, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION FOR COUNTS I, III, AND IV, AND SIX MONTHS IN THE CUSTODY OF THE RANKIN COUNTY SHERIFF'S DEPARTMENT FOR COUNT II, WITH ALL SENTENCES TO RUN CONCURRENTLY |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |

MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     At approximately 10 p.m. on February 5, 2013, Officer William Lindley of the Pearl Police Department observed a Honda Accord driven by Christopher Hobson cross the center line on Old Whitfield Road. Officer Lindley testified that Hobson "was slumped towards the middle in between the driver and passenger's side" and "was not wearing a seatbelt." When Officer Lindley activated his police cruiser's blue lights and dashboard video camera, Hobson slowed down, as if to stop. However, he then sped off with Officer Lindley giving chase. The car chase lasted approximately four minutes and covered approximately two miles through a residential area. Hobson sped through three stop signs during the chase, and the officer stated that Hobson's speed was "no higher than 70 miles per hour" (mph) in a 20 mph zone.

¶2.     Hobson was eventually forced onto a dead-end road. He drove off the road into a sparsely wooded area, stopped his vehicle, and exited the car. When the officer got out of the cruiser and ran towards Hobson, he turned away to run but was quickly tackled by Officer Lindley. Hobson escaped the officer's grasp by elbowing the officer in the chest and ran towards some nearby apartments. Officer Lindley continued his pursuit of Hobson and gave numerous verbal commands for him to stop, but Hobson failed to comply. Running through the parking lot of the apartment complex, Officer Lindley observed Hobson throw down a black handgun between some cars. The officer discharged a taser into Hobson's back, and

Hobson eventually surrendered and was taken into custody. Another officer arriving on the scene retrieved the dropped handgun. Reports later confirmed the pistol had been reported stolen in January 2013.

¶3. On June 6, 2013, a Rankin County grand jury indicted Hobson on four counts: Count I, fleeing or eluding a law enforcement officer in a motor vehicle in violation of Mississippi Code Annotated section 97-9-72(2) (Rev. 2006); Count II, simple assault of a police officer in violation of Mississippi Code Annotated section 97-3-71(1) (Rev. 2006); Count III, possession of a firearm by a previously convicted felon in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2006);[1] and Count IV, possession of a stolen firearm in violation of Mississippi Code Annotated section 97-37-35 (Rev. 2006). The indictment was later amended to charge Hobson as a habitual offender under Mississippi Code Annotated 99-19-83 (Rev. 2007).[2]

¶4. A jury trial was held in Rankin County Circuit Court on October 30-31, 2013. Officer Lindley stated that after Hobson fled the vehicle, Hobson elbowed him to escape the officer's restraint, and he dropped the firearm between cars in the parking lot before being apprehended. However, Hobson's wife, Sherry, and three of her relatives, who claimed to be eyewitnesses to the incident, testified that Hobson did not hit the officer or drop a weapon in the parking lot. They said the officer tackled Hobson immediately upon exiting the car

[1] It was stipulated at trial that Hobson was a convicted felon prior to the incident.

[2] Hobson was convicted of manslaughter on January 23, 1998, and served one year and seven months in the custody of the Mississippi Department of Corrections. Hobson also had a federal conviction for distribution of cocaine and was sentenced to a term of seventy-four months, for which he served one year, ten months, and twenty-two days in custody.

and that the officer hit Hobson multiple times. Sherry's sister, Terri Alexander, testified that she had hidden a gun underneath one of the cars in the parking lot because she was worried the police would find it on her person. On rebuttal, Officer Lindley stated he only observed four to five males standing in a nearby parking lot; he did not see anyone else in the area where the incident occurred. It was also noted that Officer Lindley recovered the pistol from the precise area where he saw Hobson drop it.

¶5. The jury convicted Hobson on all counts, but as to Count II, Hobson was convicted of misdemeanor resisting arrest as a lesser included offense of simple assault of a police officer. For Counts I, III, and IV, the trial court sentenced Hobson to life imprisonment in the custody of the Mississippi Department of Corrections, as a habitual offender without eligibility for parole or probation, with the sentences to run concurrently. For Count II, Hobson was sentenced to six months in the custody of Rankin County jail, with the sentence to run concurrently with the sentences imposed in the other counts.

¶6. Hobson filed a pro se motion for a judgment notwithstanding the verdict (JNOV), and a motion for a JNOV was also made by defense counsel. After a hearing on July 28, 2014, both motions were denied by the trial court. Hobson now appeals, alleging several errors. Finding no error, we affirm.

## DISCUSSION

I. **Whether the evidence of felony flight was sufficient to support the verdict.**

¶7. Section 97-9-72 provides:

(1) The driver of a motor vehicle who is given a visible or audible signal

4

by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.

(2) Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony[.]

Hobson argues that the evidence does not support his conviction for felony evasion under subsection (2) but merely supports a conviction for a misdemeanor under subsection (1). He argues Officer Lindley's claim that he was driving more than 70 mph in a 20 mph zone was "an exaggeration[,] and his driving did not appear to be reckless or in extreme disregard for human life." He also notes there were no pedestrians or other vehicles nearby, and he maintained control of the car throughout the chase. Hobson acknowledges that he failed to stop at three stop signs, but claims that behavior was only negligent, not reckless.

¶8. At trial, defense counsel made a motion for a directed verdict, claiming there was insufficient evidence to support a finding that Hobson was guilty of felony evasion. The trial judge concluded that the State met its prima facie burden, stating:

At that point in time, in additional to the blue lights, the officer activated his siren, his audible signal; and, thereafter, the Defendant, according to testimony and according to the video, accelerated and took off from the officer's attempt to stop him. It showed him going through a residential area exceeding the posted speed limit. I don't believe the law requires that there be anyone on the

5

road. It just is the fact he was operating the vehicle in this manner where people could be, whether they were there or not, especially in a subdivision, where anyone could have stepped from a yard or from between vehicles, or any of that area; and when he was operating the vehicle in the way that it was being operated both pursuant to the officer's testimony and the video that was shown. I believe that the jury can find the necessary elements of felony evasion as it relates to Count I.

¶9. We find the trial court's findings supported by the evidence. In reviewing the sufficiency of the evidence on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State,* 895 So. 2d 836, 843 (¶16) (Miss. 2005). However,

> [s]hould the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render.

*Id*. (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). Officer Lindley observed Hobson cross the center line on the road and operate the vehicle without wearing his seatbelt. Hobson failed to stop when the officer activated his blue lights, ran three stop signs, and exceeded the posted speed limit in a residential area. This testimony was corroborated by the dashboard camera video evidence, which additionally showed that Hobson drove on the wrong side of the road throughout much of the chase. Although Hobson characterizes the area as a "sparsely populated wooded residential area," this claim is belied by the video evidence showing several cars parked on the side of the road and homes located close to the road. Hobson made several wide turns during the chase and could have easily been involved

6

in a head-on collision, had another car been coming the other direction. We find the evidence demonstrated that Hobson was driving in a manner "as to indicate a reckless or willful disregard for the safety of persons or property." The mere fact that no one was injured by his reckless driving is irrelevant to the conviction. *See Betts v. State*, 10 So. 3d 519, 524 (¶¶15, 17) (Miss. Ct. App. 2009) (evidence defendant failed to heed police officer's order to stop, drove on wrong side of road, and drove in excess of posted speed limit sufficient to support trial court's denial of motion for directed verdict, as "reasonable jurors could have reached different conclusions with regard to every element of the offense" of "felony eluding of a police officer").

¶10. As the evidence was sufficient for the jury to conclude that Hobson was guilty beyond reasonable doubt of feloniously fleeing from a law enforcement officer, the trial court did not err in denying his motion for a JNOV.

## II. Whether the jury instruction regarding flight compromised Hobson's right to due process.

¶11. The trial court gave Jury Instruction S-5 over Hobson's objection. The instruction stated:

> The Court instructs the Jury that unexplained flight is a circumstance from which guilty knowledge may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Christopher Orlando Hobson, did flee, such unexplained flight or hiding is to be considered in connection with all other evidence in this case. You may determine from all the facts whether such unexplained flight was a conscious sense of guilt or whether it was caused by other things and give it the weight as you think it is entitled to in determining the guilt or innocence of the Defendant.

During deliberations on the jury instructions, the trial court noted:

7

The unexplained flight . . . it could be argued that even the felony evasion was a result that he was knowingly possessing a firearm as a convicted felon or that he was knowingly possessing a stolen firearm, so the unexplained flight of this flight instruction would be appropriate for the firearm charge, so it'll be given.

¶12.    The giving of a jury instruction will only be overturned on appeal if the trial court abused its discretion. *Drummer v. State*, 167 So. 3d 1180, 1186 (¶19) (Miss. 2015) (citing *Higgins v. State*, 725 So. 2d 220, 223 (¶15) (Miss. 1998)). Jury instructions given by the trial court are reviewed "as a whole to determine whether the refusal of a particular instruction was in error." *Sheriff v. State*, 156 So. 3d 924, 925 (¶7) (Miss. Ct. App. 2014) (citing *Taylor v. State*, 763 So. 2d 913, 915 (¶8) (Miss. Ct. App. 2000)). "Evidence of flight is admissible to show an accused's consciousness of guilt." *Id*. at (¶5) (citing *Fuselier v. State*, 702 So. 2d 388, 390 (¶4) (Miss. 1997)). "Prosecutors may obtain a flight instruction only if that flight is unexplained and somehow probative of guilt or guilty knowledge. Flight is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected with the case." *Drummer*, 167 So. 3d at 1188 (¶24) (internal quotations and citations omitted).

¶13.    Hobson ran from the officer, and no explanation for the flight was provided. Officer Lindley observed Hobson, a previously convicted felon, drop a firearm, which was later determined to be stolen. Thus, the trial court's conclusion that the evidence of Hobson's unexplained flight was relevant to the two charges involving the firearm and probative of guilt, is supported by the record, and we find the giving of the jury instruction, when viewed as a whole, was not in error.

III.    **Whether the State presented sufficient evidence that Hobson**

8

**possessed a stolen firearm and was aware the firearm was stolen.**

¶14. Count IV of the indictment charged Hobson with possessing a stolen firearm in violation of Mississippi Code Annotated section 97-37-35. The pertinent portion of the statute is subsection (1), which provides:

> It is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm.

Hobson claims that the State failed to prove that he knowingly possessed a stolen firearm; therefore, his conviction for Count IV should be reversed and rendered.

¶15. "For the State to prove guilty knowledge, it must prove that [the defendant] received the property under circumstances that would lead a reasonable person to believe that it was stolen." *Long v. State*, 933 So. 2d 1056, 1058 (¶6) (Miss. Ct. App. 2006) (citing *Ellett v. State,* 364 So. 2d 669, 670 (Miss. 1978)). However, "[t]he prosecution is to be given all favorable inferences from the evidence that was presented at trial." *Riley v. State*, 1 So. 3d 877, 883 (¶20) (Miss. Ct. App. 2008) (citing *Smith v. State,* 839 So. 2d 489, 495 (¶12) (Miss. 2003)). "The unexplained possession of recently stolen property is a circumstance from which culpability of a crime may be inferred." *Jones v. State*, 819 So. 2d 558, 561 (¶13) (Miss. Ct. App. 2002) (citing *Brooks v. State,* 695 So. 2d 593, 595 (Miss. 1997)). Four factors are used to evaluate that inference:

1. The temporal proximity of the possession to the crime to be inferred;

2. The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there is an attempt at

concealment or any other evidence of guilty knowledge;

4.	Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Id*.

¶16.	After the State rested, defense counsel moved for a directed verdict, specifically arguing that the State had not proven Hobson knew the gun was stolen. In response to Hobson's motion for a directed verdict, the State argued:

> [T]his Defendant is a convicted felon and there's no way that he could purchase a handgun at any reputable dealership, that he could not go to a gun show and purchase one. I think that in and of itself brings credibility to the fact that he knew it was stolen.

The owner of the pistol testified that it had been discovered stolen less than a month prior to Hobson's arrest. The owner presumed that his son, who had drug problems, had sold it to acquire drugs or money. Citing the factors outlined in *Jones*, the trial judge concluded that Hobson possessed the gun, which was the only item stolen; he discarded the gun while running from the officer, evincing guilty knowledge; and no explanation was given as to how he possessed the weapon. The trial court summarized: "[T]he fact that there is evidence there, that regardless of possession of recently stolen property, the fact that the Defendant discarded the weapon, those are circumstances from which a jury could infer guilty knowledge in the fact that he had a stolen firearm."

¶17.	We find no merit to Hobson's argument, as the circumstances surrounding the incident and Hobson's actions were sufficient for the jury to infer that he knowingly and intentionally possessed a stolen firearm.

10

**IV.     Whether the trial court's denial of Hobson's motion for a mistrial
was an abuse of discretion.**

¶18.     After the defense rested, the State presented rebuttal testimony through several witnesses.  Hobson's wife, Sherry, was called to testify regarding a phone conversation she had with Hobson three days prior to trial.  During the phone call, Hobson asked Sherry if anyone had seen the officer punch him.  When the State asked her about the conversation, Sherry replied:  "We're going through two different cases, so, I mean, both of them [involved] an incident with the police punching him," referring to a second upcoming case involving Hobson.  Defense counsel immediately requested that the jury be excused and, out of the jury's presence, asked the trial court to direct the State to restrict its questions to the incident at issue in the trial.  The trial court directed the witness that all testimony should relate to the February 5 incident, not the other case involving Hobson that occurred on March 8.  Although defense counsel said that the trial court's direction to the witness was sufficient, counsel moved for a mistrial "out of an abundance of caution," which the court denied, noting that Sherry said case, not "charge."  The trial court did offer to issue a limiting instruction to the jury, but defense counsel rejected the offer.

¶19.     Hobson now argues that the testimony concerning the other pending charges resulted in prejudice, and the trial court should have granted his motion for a mistrial.  "The decision to declare a mistrial is within the sound discretion of the trial judge."  *Robinson v. State*, 2 So. 3d 708, 716 (¶23) (Miss. Ct. App. 2008) (quoting *Brent v. State,* 632 So. 2d 936, 941 (Miss. 1994)).  Unless the trial court abused its discretion in denying a motion for a mistrial, this Court will not overturn the court's decision on appeal.  *Id*.

11

¶20. We do not find the trial court abused its discretion when it found that the witness's vague remarks regarding the other case did not result in prejudice to Hobson. "Where the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs." *Hancock v. State*, 964 So. 2d 1167, 1179 (¶27) (Miss. Ct. App. 2007) (quoting *Hobson v. State,* 730 So. 2d 20, 24 (¶10) (Miss. 1998)). Furthermore, defense counsel specifically requested that the trial judge not admonish the jury to disregard the remark. Defense counsel also stated: "And I think when she has to say there were two cases and she has to differentiate, I think *from this point forward* it is prejudicial to the – to the Defendant knowing that there's another case pending against the Defendant." (Emphasis added). Accordingly, we find no merit to this issue.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT I, FELONY EVASION, COUNT II, MISDEMEANOR RESISTING ARREST AS A LESSER INCLUDED OFFENSE OF SIMPLE ASSAULT ON A POLICE OFFICER, AND COUNTS III AND IV, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION FOR COUNTS I, III, AND IV, AND SIX MONTHS IN THE CUSTODY OF THE RANKIN COUNTY SHERIFF'S DEPARTMENT FOR COUNT II, WITH ALL SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**