# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01056-COA

**ALPHONSO WARD A/K/A ALFONSO WARD A/K/A ALFONZO WARD**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT: 08/01/2018
TRIAL JUDGE: HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED: BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN ALPHONSO WARD (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS
DISTRICT ATTORNEY: BRENDA FAY MITCHELL
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 03/10/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Following a jury trial, Alphonso Ward was convicted in the Bolivar County Circuit Court for two counts of burglary as a habitual offender. The first count was burglary of a church under Mississippi Code Annotated section 97-17-33(2) (Rev. 2014). The second count was automobile burglary[1] under Mississippi Code Annotated section 97-17-33(1).

---

[1] Ward briefly argues in a pro se supplemental brief that he should have been tried for a misdemeanor, instead of a felony. Both crimes for which Ward was indicted, tried, and convicted are felonies. Further, because Ward was convicted as a habitual offender under

Now, on appeal, Ward cites four alleged errors: (1) an improper jury instruction; (2) insufficiency of the evidence; (3) an unconstitutional habitual-offender sentence; and (4) an improper consideration of prior convictions. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. At around 9:15 a.m. on December 31, 2017, Pastor Samuel Washington and his wife arrived at Cornerstone Christian Worship Center off Highway 61 South in Cleveland, Mississippi, to begin preparing for Sunday services. When they arrived, Pastor Washington noticed that a window near the front door was broken. He also noticed that the church's communion table had been turned on its side and was propped against the broken window, blocking the window's view from the parking lot. Inside the church, Pastor Washington immediately saw "things scattered across the floor." At trial, he testified, "[Y]ou could see [that] someone [had] rifled through everything."

¶3. The Cleveland Police Department (CPD) arrived and secured the crime scene. Officer Matthew Brown initially responded to the call at Cornerstone Church, but he was directed to respond to another call not long after arriving at the church. Alongside Officer Brown, both Officer Seth Nelson and Investigator Joe Smith responded to the call. At the church, Pastor Washington guided officers through the ransacked church. He reported that an AT&T mobile hotspot and small Blu-ray player were missing from the premises. The officers took pictures of the scene and then left.

¶4. Later, while cleaning up the church, Pastor Washington found a stack of misplaced

Mississippi Code Annotated section 99-19-81 (Rev. 2015), he received the maximum sentence for each conviction.

2

school books and papers under a kitchen cabinet. The materials did not belong to the church, and a name was written on them. Pastor Washington relayed that information to the CPD. The officers returned to the church and retrieved the school books and papers.

¶5.    Responding to the separate and seemingly unrelated call, Officer Brown made contact with Alphonso Ward, and Officer Brown saw Ward carrying a pink and black backpack. As Officer Brown approached Ward on foot, Ward began to walk away. While Officer Brown was in pursuit, another officer, Sergeant Stanley Brewer, witnessed Ward "throw something in the bushes" behind a nearby building. After Ward was taken into custody, Sergeant Brewer retrieved the pink and black backpack from the bushes. The backpack contained an AT&T mobile hotspot and a Blu-ray player.

¶6.    At trial, Chanda Burton testified that on the same morning that Pastor Washington reported the break-in, she noticed that her vehicle door had been left ajar. She stated that she did not immediately think anything of it, as her young children or her husband may have left it open. Burton then noticed that she had a missed call and voicemail from the CPD stating that they needed to speak to her. Burton arrived at the police station and identified the school materials and backpack. Burton later testified that the backpack had gone missing from inside her vehicle. Burton filed a police report for automobile burglary before leaving the police station.

¶7.    After the State rested its case-in-chief, Ward moved for a directed verdict, which the circuit court denied. Ward then testified in his defense. He explained that the day before the alleged crime occurred, he had returned some stolen credit cards to the CPD. He also stated

3

that he received the backpack and the other items from a man named Edward Banks and that he intended to return the items to the CPD as he had done with the stolen credit cards. Upon the completion of Ward's testimony, the defense rested.

¶8. The jury found Ward guilty of both counts of burglary. At a subsequent hearing, the circuit court sentenced Ward as a nonviolent habitual offender to serve fourteen years in the custody of the Mississippi Department of Corrections (MDOC) for the conviction of the first count and to serve a concurrent seven-year term for the conviction of the second count. After sentencing, Ward filed a notice of appeal.

## DISCUSSION

### I. Jury Instruction

¶9. Ward submitted jury instruction D-4 to the court, which was later given to the jury as "Jury Instruction No. 7." The instruction provided:

> The Court instructs the jury that the presumption of guilt based upon recent possession of stolen goods will not be allowed to stand when the explanation of the accused, Alphonso Ward, concerning his possession is satisfactory or raises a reasonable doubt of his guilt. It is for you the jury to determine if the explanation offered by the accused, Alphonso Ward, is reasonable and credible.

¶10. This Court reviews a trial court's decision to give or refuse jury instructions for an abuse of discretion. *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016). "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Young v. State*, 891 So. 2d 813, 819 (¶16) (Miss. 2005) (quoting *Howell v. State*, 860 So. 2d 704, 761 (¶203) (Miss. 2003)). There is no reversible error if the jury instructions, when read together, fairly announce the law of the case and create no

4

injustice. *Carson v. State*, 212 So. 3d 22, 28 (¶22) (Miss. 2016) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)).

¶11. Ward asserts that the circuit court committed plain error when it gave "Jury Instruction No. 7" because it "shifted the burden of proof to [him]." Because Ward proposed the instruction, he did not object to the jury instruction at trial. "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the [circuit] court to consider the issue." *Husband v. State*, 204 So. 3d 353, 356 (¶10) (Miss. Ct. App. 2016). "It is axiomatic that 'a defendant cannot complain on appeal alleged errors invited or induced by himself.'" *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) (quoting *Galloway v. State*, 122 So. 3d 614, 645 (¶38) (Miss. 2013)). Further, "[a] defendant cannot complain of an instruction which he, not the State, requested." *Harris v. State*, 861 So. 2d 1003, 1015 (¶24) (Miss. 2003) (citing *Buford v. State*, 372 So. 2d 254, 256 (Miss. 1979)). Therefore, this issue is without merit.

## II. Sufficiency of the Evidence

¶12. In his pro se supplemental brief, Ward alleges that the State failed to prove beyond a reasonable doubt that he was guilty of burglarizing Cornerstone Church and Burton's automobile. In turn, he argues that he was deprived of his due process rights. We review the evidence in the light most favorable to the State and "ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sellers v. State*, 108 So. 3d 456, 458-59 (¶6) (Miss. Ct. App. 2012).

¶13. In this case, no eyewitnesses saw Ward burglarize the church or Burton's automobile.

5

However, Ward was connected to the crimes by circumstantial evidence. That evidence consisted of testimony from Officer Brown, who saw Ward carrying a pink and black backpack. Sergeant Brewer testified that he saw Ward fleeing from Officer Brown. He further testified that he retrieved the backpack from the bushes and found an AT&T hotspot and Blu-ray player inside it. Burton testified that her daughter's backpack, which was the same backpack that Ward tossed into the bushes, had gone missing from her vehicle. Pastor Washington testified that an AT&T hotspot and Blu-ray player were missing from the church's premises. He also testified that he discovered Burton's daughter's school books and materials in a kitchen cabinet at the church. At the police station, Burton identified the items as the school materials her daughter kept in her pink and black backpack.

¶14. The unexplained possession of recently stolen property is a circumstance from which culpability of a crime may be inferred. *Brooks v. State*, 695 So. 2d 593, 595 (Miss. 1997). A four-factor consideration is used to evaluate that inference:

1. The temporal proximity of the possession to the crime to be inferred;

2. The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;

4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Jones v. State*, 819 So. 2d 558, 561 (¶13) (Miss. Ct. App. 2002) (citing *Brooks*, 695 So. 2d at 594-95).

¶15. The first factor, the temporal proximity of possession, lends great strength to the

6

inference that Ward committed both crimes because Ward was found in sole possession of the backpack, AT&T hotspot, and Blu-ray player on the same day the burglaries were reported to the police. The second factor, the number or percentage of the fruits of the crime possessed, also lends strength to the inference because Ward possessed a high percentage of the stolen items, if not all (as the school books and papers were discovered at the church) of them. The third factor is likewise met. Ward clearly showed guilty knowledge when he fled from Officer Brown on foot and attempted to conceal the stolen items in a nearby bush. Finally, regarding whether Ward provided an explanation as to why or how he came into possession of the stolen items, Ward testified that he received the backpack and other items from a man named Edward Banks. At trial, Banks was not called as a witness on Ward's behalf, and Ward submitted no other evidence to corroborate his testimony. *See Shields v. State*, 702 So. 2d 380, 383 (Miss. 1997) ("[T]he inference is at its strongest when the defendant wholly fails to make a credible explanation or makes a demonstrably false explanation."). Therefore, these factors provide ample evidence for this Court to conclude that there was sufficient evidence to support a conviction of both crimes.

### III. Habitual Offender

¶16. Ward also asserts in his pro se supplemental brief that the trial court violated his Sixth and Fourteenth Amendment rights by sentencing him as a nonviolent habitual offender under Mississippi Code Annotated section 99-19-81. That statute provides in pertinent part:

> Every person convicted in this state who shall been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year in any state and/or federal penal institution, . . .

7

shall be sentenced to the maximum term of imprisonment prescribed for such felony . . . .

In an "Amended Judgment and Sentence" order, the circuit court sentenced Ward as a habitual offender to serve a term of fourteen years for the conviction of count one and a concurrent seven-year term for the conviction of count two.

¶17. Ward now claims that his sentencing "should have been presented to the jury." Ward argues that his enhanced sentence as a habitual offender under section 99-19-81 is contrary to the United States Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 446 (2000). However, the rule adhered to in those cases is as follows: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Alleyne*, 570 U.S. at 126 (Roberts, C.J., dissenting) (emphasis added) (quoting *Apprendi*, 530 U.S. at 490). Therefore, *Alleyne* and *Apprendi* do not require the State to prove prior convictions to a jury. It is constitutionally permissible for a judge to impose an enhanced habitual-offender sentence under section 99-19-81 based on the judge's own finding that the defendant's prior convictions and sentences satisfy the requirements of that statute. *See Smith v. State*, 963 So. 2d 1168, 1169-70 (¶5) (Miss. Ct. App. 2007); *accord Collins v. State*, 232 So. 3d 739, 747 (¶33) (Miss. Ct. App. 2017) (applying the same to Mississippi Code Annotated section 99-19-83 (Rev. 2015)).

**IV.    The Circuit Court's Consideration of Ward's Prior Offenses**

¶18. Ward asserts that the trial court committed reversible error when it considered his prior convictions to determine his sentences for both burglary convictions. He claims, "No

8

person from MDOC Records Department [authenticated] Ward's prior convictions to be true or correct." He finally asserts that such action prejudiced the outcome his trial and violated his Sixth Amendment right to confront a witness.

¶19.    At the sentencing hearing, the State introduced three certified exhibits that collectively showed that Ward had pled guilty to three charges arising from separate incidences[2] and that he had been sentenced to serve at least one year for each incident. Further, Ward was sentenced as a nonviolent habitual offender for those three offenses. The defense counsel did not object to the use of those exhibits. Therefore, we find that the State presented adequate evidence to prove Ward's prior convictions.

**CONCLUSION**

¶20.    For these reasons, the judgment of the Bolivar County Circuit Court is affirmed.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

---

[2] Those prior convictions included (1) Cause No. 2006-054; (2) Cause No. 2006-055; and (3) Cause No. 2006-056.